## SUCCESSION OF JOHN McDONOGH.

C. ROSELIUS, F. B. D. AQUIN, A. D. CROSSMAN AND W. E. LEVE-RICH *v.* R. R. GURLEY, B. C. HOWARD AND B. MAYER.—No. 2416.

T. J. DURANT, Attorney of Absent Heirs of J. McDonogh *v.* R. R. GURLEY, B. C. HOWARD AND B. MAYER.—No. 2456.

A testamentary executor, present in the State, but domiciliated out of it, cannot obtain letters of administration without executing his bond with good and solvent security, for such sum and under such conditions as are required by law from dative testamentary executors.

APPEAL from the Fifth District Court of New Orleans. *Buchanan* J. *M. Grivot* and *Levi Pierce*, for plaintiff. *H. H. Strawbridge, Miles Taylor* and *J. A. Maybin*, for defendants. By the court : *(Slidell*, J., absent.)

EUSTIS, C. J. No. 2416.—By the will of the late *John McDonogh*, seventeen persons were named executors, of whom eight resided in New Orleans, and six resided in Baltimore, and three elsewhere.

Four of the residents of New Orleans were qualified as executors, received their letters testamentary, and took upon themselves the performance of their trust. Five of the non-residents, viz : Messrs. *Gurley, Howard, Mayer, Gibson* and *Smith,* were also qualified as executors, received their letters, and entered upon the performance of their duties.

This appointment has given rise to several appeals, from decrees rendered by the Court of the Fifth District of New Orleans. The questions involved in each case, though dependent, it will be necessary to examine separately, leaving out of view all matters not necessarily connected with them.

An appeal is taken by the New Orleans executors of the succession of *John McDonogh,* from two decrees, by which *R. R. Gurley, Benjamin C. Howard* and *Brantz Mayer,* were admitted to be qualified as executors of said succession, and letters testamentary were directed to be given to them, without their being required to give security.

The third section of the Act of 1842, amending the article 924 of the Code of Practice, and for other purposes, provides, "that whenever the testamentary executor named in the will, shall be present in the State, but be domiciled out of it, the judge shall only grant him the letters on the execution of his bond, with a good and solvent security, for such a sum, and under such conditions as are required by law from dative testamentary executors." Acts of 1842, 302.

This law is plain, free from doubt, and imperative. The residence of the gentlemen is alleged, in their petitions, to be in Baltimore, and those appointments, without being required to give security, cannot be maintained. The decrees appealed from, must therefore be reversed ; the appointment of Messrs. *R. R. Gurley, B. C. Howard* and *Brantz Mayer,* as executors, vacated ; the appellees to pay the costs of the appeal.

~~~~~~~~~~~~~~~~

By the court :

EUSTIS, C. J. No. 2456.—On the 1st December, 1851, a judgment was rendered, by which the letters of testamentary executorship, heretofore granted to *R. R. Gurley, Benjamin C. Howard* and *Brantz Mayer,* of the city of Baltimore, in the succession of *John McDonogh,* were revoked. This judgment was rendered on the application and petition of *Thomas J. Durant, Esq.,* attorney, appointed by the court to represent the absent heirs of the deceased. Messrs. *Gurley, Howard* and *Mayer,* have appealed from this judgment.

The residence of *Mr. Gurley,* was in the district of Columbia, and that of Messrs. *Howard* and *Mayer,* in Baltimore. These gentlemen, as we have seen, were appointed executors by the will, and were admitted to be qualified, under decrees, of date the 11th and 13th of December, 1850. The effects of the succession having been subjected to process of sequestration, at the instance of the State, these gentlemen, who had come to New Orleans for the purpose of attending to their duties as executors, returned to their homes a few days after, and have not since come back to Louisiana.

On departing from the State, they left no power of attorney to represent them in the administration, as required by the Act of 1849, and for this reason, the district judge revoked their letters testamentary.

The decision which we have rendered, concerning the validity of the decrees, by virtue of which the appellees claim to act as executors, renders the decision in this appeal unnecessary. It falls with that decision.

SUCCESSION OF
McDONOGH.

PRESTON, J., dissenting.* *John McDonogh*, a resident of Louisiana, leaving a large estate, appointed, by his will, executors residing in and out of the State of Louisiana. Four of those appointed in the State, were qualified, and four of those residing without the State.

Questions are presented in relation to the respective rights of these executors, which, I think, might be postponed until the decision of the main case now before the court. But as the decisions are pressed, I will give my conclusions, without going at length into the reasons until the main questions, with regard to the will, are decided.

The whole estate of *McDonogh* appears, to me, to be so much involved in controversies, that, as at present advised, I am of opinion, that commissions on the whole property, will be but a just and reasonable compensation for his numerous executors. They should be paid only as the estate is passed over to his creditors, legatees or heirs. I should infer this from article 1676 of the code, and 1067 of the Code of Practice; but when I compare article 1663, with 1182 of the code, the inference is irresistible.

In making the estimate of the amount of the commissions, property, which is of no value, is to be deducted. That is the meaning of the term productive, in the article 1676 of the code allowing commissions.

I do not believe *McDonogh* intended to make any distinction between his executors, as to their powers. He made the cities of Baltimore and New Orleans, his universal legatees. Considering the whole of his will, it appears to me, he intended that the foreign executors should see his whole will carried into effect, but guard especially the interests of the city of Baltimore, and of the colonization society; and that his executors in this State, should guard especially the interest of New Orleans, and some of her charitable institutions.

This object would probably fail of its accomplishment, if the foreign executors were required to give security like dative executors. He, therefore, never intended it. Does the 3d section of the act of the 16th of March, 1842, imperatively require it?

It is an act providing "for the administration of the successions of strangers dying, possessed of property, within the State of Louisiana, and for other purposes." The object of the act, as expressed in the title, does not necessarily embrace the estate or executors of *McDonogh*, who was not a stranger, but an ancient citizen of this State. I do not think the spirit of the act applicable to this case. The object of the act, was to prevent a foreign executor representing the whole estate, from carrying off the whole property, without accounting to our courts. That is impossible, where there are resident as well as non-resident executors, and joint resident and non-resident legatees of the whole estate, entitled to claim its immediate seizin by their commissioners. Indeed, it appears, that by a writ of sequestration on behalf of the States of Maryland and Louisiana, the great mass of the succession is tied up, so that, apparently, it is not in the hands of the executors. So that the security for the faithful administration of the foreign executors, would, under all the circumstances, be but nominal. Code 1034. I do not think, therefore, that the appointment of the foreign executors, should be vacated on account of not having furnished it. Much less should their appointment be vacated for having returned to their homes, without leaving powers of attorney. Their

---

*The dissenting opinion of Judge *Preston*, expressed his views of these cases, and also of the following case on the opposition of *Howard, Gurley* and *Mayer*, to the account of the executors of *John McDonogh*. By agreement of counsel, these suits were consolidated.

co-executors, in such case, act for them, for whose acts they are responsible. <span>Succession of McDonogh.</span> Code, art. 1674. The article of the code 1149, and the act of 1849, relied upon for revoking their appointment, on account of absence, refers to cases where their absence leaves the estate unrepresented. No such thing existed in this case. To be a cause for dismissing them, it must also appear, that the succession suffered loss by their absence. Nothing of the kind is pretended. They were strangers, not advised, so far as appears, of these local laws which probably exist no where else. They complied with them, as soon as advised of the necessity. I do not see in the records, the least disposition, on their part, to neglect their duty, disregard our laws, or not to pay the most implicit obedience to our courts. In all respects, I think, they stand upon the same footing with the domestic executors, and have, with them, a great and difficult duty to perform, to execute a somewhat anomalous will in this State, disposing of a very large estate for purposes of great public utility, the execution of which, will require the united exertions and wisdom of all the executors; and for which, probably, commissions on the whole estate, will not be more than an adequate compensation.